UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA RHEBA ESTANTE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>Defendant. | Case No. 17-cv-05766-SK<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL; DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; AND DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Regarding Docket Nos. 29, 36 |

*Pro se* Plaintiff Maria Rheba Estante has filed three motions: a motion to disqualify the Berkeley City Attorney from representing Defendant City of Berkeley that includes a request for a preliminary injunction (Dkt. No. 29), and a motion seeking a temporary restraining order against City of Berkeley employees with whom Plaintiff previously worked. (Dkt. No. 36.)  Having reviewed the papers, the relevant record in this case, and having heard oral argument, the Court DENIES Plaintiff's motions for the reasons set forth below.

## MOTION TO DISQUALIFY COUNSEL

Plaintiff asserts three claims against the City of Berkeley:  (1) disability discrimination, (2) failure to provide reasonable accommodation, and (3) retaliation.  These claims arise from Plaintiff's part-time post-graduate clinical internship with the City of Berkeley's Behavioral Health Clinic.  (*See* Complaint at Dkt. 1.)

Plaintiff moves to disqualify the Berkeley City Attorney's Office based on her assumption that Sarah Reynoso, a former Assistant City Attorney and Director of Human Resources for the City of Berkeley established an attorney-client relationship prior to the instigation of this lawsuit.

1    Plaintiff alleges that she contacted Reynoso at the time of her termination to complain about
2    threats by Plaintiff's supervisor. (Dkt. No. 29.) Plaintiff alleges that she "contacted" Reynoso "in
3    writing and also left a voice message to the City of Berkeley's Human Resources stating that they
4    [sic] felt threatened and did not want to meet alone with" Plaintiff's supervisor. (*Id.*) Plaintiff
5    alleges that Reynoso then "directed Employee Relations Manager Margarita Zamora" to "meet
6    with Plaintiff to obtain an account of the incident" from Plaintiff. (*Id.*) Plaintiff claims that, by
7    interacting with Reynoso, Plaintiff was "by default, engaging services of both the Human
8    Resources Department and City Attorney's Office due to Ms. Reynoso's dual role at the time."
9    (*Id.*) Thus, Plaintiff asserts that she developed an attorney-client relationship, and that relationship
10   prevents the City Attorney's Office from accepting employment adverse to Plaintiff. (*Id.*)

11   In determining whether to disqualify a lawyer or the lawyer's larger employer, the Court
12   must first determine if there was an attorney-client relationship between the moving party,
13   Plaintiff here, and the lawyer or employer responding to the motion, Reynoso and the City
14   Attorney's Office. "Before an attorney may be disqualified from representing a party in litigation
15   because his representation of that party is adverse to the interests of a current or former client, it
16   must first be established that the party seeking the attorney's disqualification was or is
17   'represented' by the attorney in a manner giving rise to an attorney-client relationship." *Civil
18   Service Comm. v. Superior Court*, 163 Cal.App.3d 70, 76-77 (1984). Motions to disqualify
19   counsel are decided under state law, but are ultimately within the discretion of the Court. *Hitachi,
20   Ltd. v. Tatung Co.,* 419 F.Supp.2d 1158, 1160 (N.D. Cal. 2006) (internal citations omitted). Under
21   California law, an attorney-client relationship is developed when there is a contract, either
22   "express or implied, formal or informal" between the attorney and client for the creation of the
23   relationship. *California Earthquake Auth. v. Metropolitan West Sec. LLC*, 712 F.Supp.2d 1124,
24   1229 (E.D. Cal. 2010) (*quoting Nichols v. Keller*, 15 Cal.App.4th 1672, 1684 (1993)). *See also*
25   *United States v. Richey*, 632 F.3d 559, 566-567 (9th Cir. 2011) (attorney-client privilege does not
26   apply unless a client seeks legal advice, as opposed to non-legal advice; finding that attorney
27   assisting in providing valuation services not acting as attorney and that communications not
28   privileged).

Plaintiff provides no evidence to show that she reached an agreement to enter into an attorney-client relationship with Reynoso. She does not state that Reynoso agreed to provide her with legal advice in the context of an attorney-client relationship. Plaintiff states only that she reported to Reynoso the threats allegedly made by Plaintiff's supervisor and that Reynoso then directed Plaintiff to speak with Zamora in the Human Relations department. In addition, Defendant claims that Reynoso, a former Human Resources Director, is not and was not serving a dual role as an attorney for the City of Oakland. (Dkt. 37.) Given Plaintiff's failure to establish that she had an attorney-client relationship with Reynoso, the motion to disqualify and the corresponding request for a preliminary injunction are DENIED.

## MOTION FOR TEMPORARY RESTRAINING ORDER

The purpose of injunctive relief, including a temporary restraining order ("TRO"), is to preserve the status quo and prevent the irreparable loss of rights prior to judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir. 1984). The Court can only grant this extraordinary remedy only after a clear showing that the plaintiff is entitled to such relief. *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 22 (2008); *Earth Island Institute v. Carlton,* 626 F.3d 462, 469 (9th Cir. 2010). The four-party traditional test for establishing the entitlement for relief by TRO includes:

1. That plaintiff is likely to succeed on the merits;
2. That plaintiff is likely to suffer irreparable harm in absence of preliminary relief;
3. That the balance of equities tip in plaintiff's favor; and
4. That an injunction is in the public interest.

*Winter,* 555 U.S. at 7.

Here, Plaintiff seeks a TRO to prevent her former supervisor Jennifer Wydro, Tenli Yavneh and Steven Grolnic-McClurg from appearing in court proceedings and being in close physical proximity to Plaintiff. (Dkt. No. 36.) Plaintiff also asks that the Court scrutinize these individuals' conduct for the purposes of determining if the Court should revoke or suspend their ability to authorize involuntary psychiatric holds under California Welfare and Institutions Code §

3

5150.  (*Id.*)

In support of her request, Plaintiff relies on the purportedly "abusive conduct" on the part of these individuals.  Plaintiff contends that their threats of professional sanctions by reporting Plaintiff to the California BBS resulted in Plaintiff's duress.  (*Id.*)  However, Plaintiff has not addressed the elements of the four-part test specified above.  Plaintiff has not demonstrated a connection of the alleged abusive conduct to the parties' presence in court proceedings or their authority to authorize involuntary psychiatric holds.  Plaintiff has not shown that this Court has the ability to revoke or suspend powers that the State of California grants to medical providers.  Given that Plaintiff has not made an adequate showing that she is entitled to injunctive relief, the request for a TRO is DENIED.

**IT IS SO ORDERED**.

Dated: January 29, 2018

_____
SALLIE KIM
United States Magistrate Judge